1
2
3
4
5
6
7
8                           UNITED STATES DISTRICT COURT

9                        FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   GREGORY A. CABRAL,                          No.  2:14-cv-0963-KJN

12                 Plaintiff,

13         v.                                     ORDER

14   COMMISSIONER OF SOCIAL
     SECURITY,
15
                  Defendant.
16

17

18         Plaintiff seeks judicial review of a final decision by the Commissioner of Social Security

19   ("Commissioner") denying plaintiff's application for Disability Insurance Benefits ("DIB") and

20   Supplemental Security Income ("SSI") under Titles II and XVI, respectively, of the Social

21   Security Act ("Act").[1]  In his motion for summary judgment, plaintiff principally contends that

22   the Commissioner erred by finding that plaintiff was not disabled from January 1, 2009,

23   plaintiff's alleged disability onset date, through the date of the ALJ's decision.  (ECF No. 17.)

24   The Commissioner filed an opposition to plaintiff's motion and a cross-motion for summary

25   judgment.  (ECF No. 24.)  No optional reply brief was filed.

26   _____

27   [1] This action was initially referred to the undersigned pursuant to E.D. Cal. L.R. 302(c)(15), and
     both parties voluntarily consented to proceed before a United States Magistrate Judge for all
28   purposes.  (ECF Nos. 7, 11.)

                                                1

For the reasons discussed below, the court DENIES plaintiff's motion for summary judgment, GRANTS the Commissioner's cross-motion for summary judgment, and enters judgment for the Commissioner.

I.      BACKGROUND

Plaintiff was born on March 21, 1978, has at least a high school education, is able to communicate in English, and previously worked as a landscape gardener, performing both outside landscape labor and recordkeeping/billing work.[2]  (Administrative Transcript ("AT") 28, 48-52.) On August 10, 2010, and August 26, 2010, at the age of 32, plaintiff applied for DIB and SSI, respectively, alleging that his disability began on January 1, 2009, and that he was disabled primarily due to hip, lower back, and leg impairments. (AT 20, 91-92, 96-97, 158, 165, 179.)[3]  On December 10, 2010, the Commissioner determined that plaintiff was not disabled.  (AT 20, 100-04.)  Upon plaintiff's request for reconsideration, that determination was affirmed on May 3, 2011.  (AT 20, 105-10.)  Thereafter, plaintiff requested a hearing before an administrative law judge ("ALJ"), which took place on April 5, 2012, and at which plaintiff, represented by a non-attorney representative, and a vocational expert ("VE") testified.  (AT 20, 42-90.)

In a decision dated May 24, 2012, the ALJ determined that plaintiff had not been under a disability, as defined in the Act, from January 1, 2009, plaintiff's alleged disability onset date, through the date of the ALJ's decision.  (AT 20-29.)  The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on January 23, 2014.  (AT 9-11.)  Thereafter, upon receiving an extension of time to file a civil action from the Appeals Council (AT 1), plaintiff filed this action in federal district court on April 18, 2014, to obtain judicial review of the Commissioner's final decision.  (ECF No. 1.)

---

[2] Because the parties are familiar with the factual background of this case, including plaintiff's medical and mental health history, the court does not exhaustively relate those facts in this order. The facts related to plaintiff's impairments and treatment will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

[3] Regardless of the alleged disability onset date, SSI is not payable prior to the month following the month in which the application was filed.  20 C.F.R. § 416.335.

II.     ISSUES PRESENTED

On appeal, plaintiff has raised the sole issue of whether the ALJ improperly rejected plaintiff's testimony concerning his own symptoms and functional limitations.

III.    LEGAL STANDARD

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citation omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

IV.    DISCUSSION

A.     Summary of the ALJ's Findings

The ALJ evaluated plaintiff's entitlement to DIB and SSI pursuant to the Commissioner's standard five-step analytical framework.[4]  As an initial matter, the ALJ noted that plaintiff met the

---

[4] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program. 42 U.S.C. §§ 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. §§ 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.

insured status requirements of the Act for purposes of DIB through December 31, 2013.  (AT 22.)

At the first step, the ALJ concluded that plaintiff had not engaged in substantial gainful activity

since January 1, 2009, plaintiff's alleged disability onset date.  (Id.)  At step two, the ALJ found

that plaintiff had the following severe impairment: status post total right hip arthroplasty.  (Id.)

However, at step three, the ALJ determined that plaintiff did not have an impairment or

combination of impairments that met or medically equaled the severity of an impairment listed in

20 C.F.R. Part 404, Subpart P, Appendix 1.  (AT 24.)

Before proceeding to step four, the ALJ assessed plaintiff's residual functional capacity

("RFC") as follows:

> After careful consideration of the entire record, the undersigned
> finds that the claimant has the residual functional capacity to
> perform sedentary work as defined in 20 CFR 404.1567(a) and
> 416.967(a) except occasionally climb ramps, stairs, kneel, stoop,
> crawl, and crouch, occasionally walk on uneven terrain, avoid
> climbing ladders/ropes/scaffolds and working at heights, and
> requires an option to sit or stand.

(AT 24-25.)

At step four, the ALJ found that plaintiff was unable to perform any past relevant work.

(AT 27.)  However, at step five, the ALJ determined, based on the VE's testimony, that,

considering plaintiff's age, education, work experience, and RFC, there were jobs that existed in

significant numbers in the national economy that plaintiff could perform.  (AT 28-29.)

---

> Step three: Does the claimant's impairment or combination of impairments meet or
> equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the
> claimant is automatically determined disabled.  If not, proceed to step four.
>
> Step four:  Is the claimant capable of performing his past relevant work?  If so, the
> claimant is not disabled.  If not, proceed to step five.
>
> Step five:  Does the claimant have the residual functional capacity to perform any
> other work?  If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation
process.  Bowen, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential
evaluation process proceeds to step five.  Id.

1    Accordingly, the ALJ concluded that plaintiff had not been under a disability, as defined

2    in the Act, from January 1, 2009, plaintiff's alleged disability onset date, through the date of the

3    ALJ's decision.  (AT 29.)

4        B.    Plaintiff's Substantive Challenges to the Commissioner's Determinations

5    As noted above, plaintiff contends that the ALJ improperly rejected plaintiff's testimony

6    concerning his own symptoms and functional limitations.

7    In Lingenfelter v. Astrue, 504 F.3d 1028 (9th Cir. 2007), the Ninth Circuit Court of

8    Appeals summarized the ALJ's task with respect to assessing a claimant's credibility:

9
> To determine whether a claimant's testimony regarding subjective
10   > pain or symptoms is credible, an ALJ must engage in a two-step
> analysis.  First, the ALJ must determine whether the claimant has
11   > presented objective medical evidence of an underlying impairment
> which could reasonably be expected to produce the pain or other
> symptoms alleged.  The claimant, however, need not show that her
12   > impairment could reasonably be expected to cause the severity of
> the symptom she has alleged; she need only show that it could
13   > reasonably have caused some degree of the symptom.  Thus, the
> ALJ may not reject subjective symptom testimony . . . simply
14   > because there is no showing that the impairment can reasonably
> produce the degree of symptom alleged.
15
> Second, if the claimant meets this first test, and there is no evidence
16   > of malingering, the ALJ can reject the claimant's testimony about
> the severity of her symptoms only by offering specific, clear and
17   > convincing reasons for doing so. . . .

18   Lingenfelter, 504 F.3d at 1035-36 (citations and quotation marks omitted).  "At the same time, the

19   ALJ is not required to believe every allegation of disabling pain, or else disability benefits would

20   be available for the asking...."  Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012).

21   "The ALJ must specifically identify what testimony is credible and what testimony

22   undermines the claimant's complaints."  Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685,

23   693 (9th Cir. 2009) (quoting Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir.

24   1999)).  In weighing a claimant's credibility, an ALJ may consider, among other things, the

25   "'[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or

26   between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and

27   testimony from physicians and third parties concerning the nature, severity, and effect of the

28   symptoms of which [claimant] complains.'"  Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir.

1   2002) (modification in original) (quoting Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir.

2   1997)).  If the ALJ's credibility finding is supported by substantial evidence in the record, the

3   court "may not engage in second-guessing."  Id. at 959.

4          As an initial matter, the court observes that the ALJ here did not entirely discredit

5   plaintiff's testimony.  Indeed, based in part on plaintiff's testimony regarding his pain, the ALJ

6   limited plaintiff to a reduced range of sedentary work, which was more restrictive than any of the

7   medical opinions in the record.  (AT 24-27.)  Nevertheless, to the extent that the ALJ discounted

8   plaintiff's testimony regarding the severity of his symptoms and functional limitations, the ALJ

9   provided several specific, clear, and convincing reasons for doing so.

10         The ALJ properly relied on the medical opinions of the consultative examiners and state

11   agency physicians to find plaintiff not completely credible.  (AT 23, 26.)

12         On November 18, 2010, plaintiff was personally examined and evaluated by consultative

13   examiner and orthopedic specialist, Dr. John Simmonds.  (AT 276-80.)  Dr. Simmonds'

14   examination was generally normal, except that plaintiff had difficulty rising on toes and heels

15   more predominantly on the right, a noticeable right antalgic gait, and decreased and painful range

16   of motion of the right hip with pain along the trochanteric site and along the anterior thigh.  (AT

17   278-79.)  However, Dr. Simmonds also documented that plaintiff did not use assistive devices or

18   braces for normal ambulation and observed that:

19
20                 The claimant does not appear to be in acute or chronic distress.  The
                   claimant is able to move about the office freely and slowly, without
                   any assistance, and is able to get onto and off the examination table
21                 and assume a supine position without any assistance or difficulty.
                   The claimant is noted to be seated on the examination table in
22                 apparent comfort throughout the interview and evaluation process.

23   (AT 278.)  An examination of plaintiff's lower back revealed no tenderness, no evidence of

24   increased muscle tone or spasm, and normal range of motion, with negative straight-leg raising

25   tests bilaterally.  (Id.)  Dr. Simmonds diagnosed plaintiff with degenerative joint disease of the

26   right hip (probable avascular necrosis) and opined that plaintiff could nevertheless push, pull, lift,

27   and carry 20 pounds occasionally and 10 pounds frequently; walk and stand for 4-6 hours per day,

28   with no assistive device required for ambulation; sit without restriction; and occasionally bend,

1    kneel, stoop, crawl, crouch, walk on uneven terrain, climb ladders, and work at heights.  (AT

2    279.)

3           Subsequently, on December 10, 2010, state agency physician Dr. Jaituni reviewed

4    plaintiff's records and opined that plaintiff was capable of performing light work with some

5    occasional postural limitations.  (AT 202-06.)

6           Based on diagnoses of avascular necrosis and severe degenerative joint disease of the right

7    hip, plaintiff then underwent a total right hip replacement on February 3, 2011.  (AT 25, 218-19.)

8    A few months after the surgery, state agency physician Dr. Resnik reviewed plaintiff's records

9    and also opined that plaintiff was capable of performing light work with some occasional postural

10   limitations.  (AT 255-57.)[5]

11          Even though the ALJ, in considering the record as a whole, ultimately determined that

12   plaintiff was more limited, and assessed a more restrictive RFC than consultative examiner Dr.

13   Simmonds and the state agency physicians, their opinions nonetheless undermine plaintiff's

14   allegations of symptoms and functional limitations to a disabling degree.

15          The ALJ also permissibly relied on the medical records and treatment notes to discount

16   plaintiff's testimony.  (AT 27.)  According to his treating physicians, plaintiff did well during his

17   hospitalization for the hip replacement surgery in early February 2011, and "ambulated quite

18   nicely."  (AT 217.)  At a subsequent February 23, 2011 visit, plaintiff "was able to walk onto and

19   off of the HOPE van without aid, sitting erect without discomfort."  (AT 238.)  Additionally, at a

20   June 8, 2011 visit, plaintiff was noted to be "able to rise to and from a sitting position without

21   difficulty.  Able to walk up and down the stairs without pain."  (AT 273.)  Finally, at a January

22   23, 2012 visit, plaintiff was noted to have right hip tenderness and "mild pain w/motion," but had

23   no lumbar spine tenderness, with normal mobility and curvature.  (AT 269.)  To be sure, "after a

24   claimant produces objective medical evidence of an underlying impairment, an ALJ may not

25   reject a claimant's subjective complaints based solely on a lack of medical evidence to fully

26   _____

27   [5] On April 19, 2011, plaintiff was also personally evaluated by consultative psychologist Dr.
     Michael Maguire, who diagnosed plaintiff with some mild depression and anxiety symptoms
     related to his hip replacement, and who did not assess any mental functional limitations.  (AT

28   240-43.)

corroborate the alleged severity of pain." <u>Burch</u>, 400 F.3d at 680 (citing <u>Bunnell v. Sullivan</u>, 947 F.2d 341, 345 (9th Cir. 1991)).  However, while lack of medical evidence cannot form the sole basis for discounting plaintiff's subjective symptom testimony, it is nevertheless a relevant factor for the ALJ to consider.  <u>Id.</u> at 681.  Thus, the ALJ properly considered any inconsistencies between plaintiff's testimony and the medical records.

Furthermore, the ALJ reasonably referenced plaintiff's limited treatment, which appears inconsistent with the disabling symptoms and functional limitations alleged by plaintiff.  (AT 26-27.)[6]  Apart from the February 2011 hip replacement surgery, there is no documentation of any further surgery, pain injections, or chiropractic care in the record.  (AT 27.)  Plaintiff received physical therapy immediately after surgery, but nothing further since that time.  (AT 26, 66.)  Notably, plaintiff also testified that, during an incarceration for possession of crystal meth in 2009-2010, he had declined the recommended treatment of Ibuprofen for his pain, because he did not like the feeling of swallowing a pill.  (AT 56-60.)[7]  After his release from jail in June of 2010, plaintiff first sought treatment for his hip in August of 2010 when he filed for Social Security disability benefits.  (AT 61-62.)

Finally, the ALJ properly found that plaintiff's activities were inconsistent with his allegations of disabling symptoms and limitations.  (AT 27.)  "While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting...Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict

[6] The court is cognizant of the fact that plaintiff was homeless for large portions of the period at issue.  However, the record here indicates that plaintiff had access to medical services, up to and including surgery.  Thus, it does not appear that the limited treatment in this case resulted from an inability to access medical care.  Regardless, even if plaintiff's access to medical care were limited, the ALJ also provided several other specific, clear, and convincing reasons for discounting plaintiff's testimony.

[7] Until a few months prior to the administrative hearing, plaintiff used marijuana a couple of times a month and drank about a beer a day.  However, it does not appear that plaintiff used these substances for pain control—according to plaintiff's testimony, he used marijuana only when he had the opportunity and drank alcohol out of boredom.  (AT 78-80.)

1   claims of a totally debilitating impairment." Molina, 674 F.3d at 1112-13 (citations and quotation

2   marks omitted); see also Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005) (ALJ properly

3   considered claimant's ability to care for her own needs, cook, clean, shop, interact with her

4   nephew and boyfriend, and manage her finances and those of her nephew in the credibility

5   analysis; Morgan v. Comm'r of Soc. Sec., 169 F.3d 595, 600 (9th Cir. 1999) (ALJ's

6   determination regarding claimant's ability to "fix meals, do laundry, work in the yard, and

7   occasionally care for his friend's child" was a specific finding sufficient to discredit the

8   claimant's credibility).

9          Here, the ALJ observed that plaintiff could cook, do his laundry, take out the trash, and go

10  grocery shopping for about 30 minutes.  (AT 27, 72-73.)  Plaintiff testified that he did not use an

11  assistive device for ambulation, and no problems with sitting were observed when plaintiff filed

12  his disability applications.  (AT 27, 68-69, 185.)  Also, plaintiff testified that he had a work

13  assignment as a trustee while in jail in 2009-2010, during which he "pretty much controlled, ran,

14  cleaned, fed the whole one side of the jail," although he had to work by himself due to the fact

15  that other prisoners gave him a hard time because he was "handicapped."  (AT 58-59.)  In light of

16  those activities, the ALJ rationally concluded that plaintiff was capable of at least sedentary work,

17  especially with a sit-stand option added.  (AT 27.)

18         To be sure, the record may contain some contrary evidence, suggesting that plaintiff's

19  activities were more limited.  However, it is the function of the ALJ to resolve any ambiguities,

20  and the court finds the ALJ's assessment to be reasonable and supported by substantial evidence.

21  See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (affirming ALJ's credibility

22  determination even where the claimant's testimony was somewhat equivocal about how regularly

23  she was able to keep up with all of the activities and noting that the ALJ's interpretation "may not

24  be the only reasonable one").  As the Ninth Circuit explained:

25                   It may well be that a different judge, evaluating the same evidence,
                     would have found [the claimant's] allegations of disabling pain
26                   credible.  But, as we reiterate in nearly every case where we are
                     called upon to review a denial of benefits, we are not triers of fact.
27                   Credibility determinations are the province of the ALJ...Where, as
                     here, the ALJ has made specific findings justifying a decision to
28                   disbelieve an allegation of excess pain, and those findings are

1    supported by substantial evidence in the record, our role is not to
2    second-guess that decision.

3    Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989).

4    V.     CONCLUSION

5        In sum, the court concludes that the ALJ's decision was free from prejudicial error and

6    supported by substantial evidence in the record as a whole.  Accordingly, IT IS HEREBY

7    ORDERED that:

8        1.  Plaintiff's motion for summary judgment (ECF No. 17) is denied.

9        2.  The Commissioner's cross-motion for summary judgment (ECF No. 24) is granted.

10       3.  Judgment is entered for the Commissioner.

11       4.  The Clerk of Court shall close this case.

12       IT IS SO ORDERED.

13   Dated:  May 29, 2015

14
                                    _____
15                                  KENDALL J. NEWMAN
                                    UNITED STATES MAGISTRATE JUDGE
16

17

18

19

20

21

22

23

24

25

26

27

28